UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Nevada Resorts Association – International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada Local 720 Pension Trust,<br><br>    Plaintiff<br><br>v.<br><br>JB Viva Vegas, L.P.,<br><br>    Defendant | Case No.: 2:19-cv-00499-JAD-DJA<br><br>**Order Granting Plaintiff's Motion for Summary Judgment, Denying Defendant's Motion for Summary Judgment, and Vacating Arbitration Award**<br><br>[ECF Nos. 25, 26] |

When the musical *Jersey Boys* ended its run on the Las Vegas Strip, JB Viva Vegas, the show's producer, stopped making payments on behalf of its union stagehands to the Nevada Resorts Association – International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada Local 720 Pension Trust (the Plan). The Plan determined that, under the Multiemployer Pension Amendments Act (MPPAA), JB was required to pay withdrawal liability to the Plan. JB disagreed, and the parties submitted their dispute to arbitration. The arbitrator found that JB did not owe the Plan any money because of an exception to the MPPAA's withdrawal-liability rules. The Plan initiated this action to modify the award and JB counterclaimed, asking for the award to be affirmed. Both parties move for summary judgment. Because the arbitrator improperly shifted the burden of proof in the dispute to the Plan, I vacate the award.

**Background**

**A.     Withdrawal liability and the MPPAA**

After passing the Employee Retirement Income Security Act of 1974 (ERISA), "Congress determined that unregulated withdrawals from multiplayer plans could endanger their financial vitality and deprive workers of the vested rights" that they anticipated would be theirs when they retired.[1] To alleviate the problem of employer withdrawals, Congress amended ERISA with the MPPAA to require employers who withdraw from multiemployer pension plans to pay withdrawal liability—the unfunded vested benefits attributable to that employer's participation.[2] Congress adopted these rules as a safeguard for "the solvency of private pension plans."[3] So under the MPPAA, if an employer withdraws from a multiemployer pension plan, "the employer is liable to the plan in the amount determined" by the pension plan sponsor.[4] When an employer withdraws from a plan, the plan sponsor issues a determination of liability, which the employer may dispute. The MPPAA requires most disputes about withdrawal liability to be resolved through arbitration.[5]

There are a handful of exceptions to withdrawal liability. Relevant to this dispute is the so-called "Entertainment Exception," which allows employers to avoid withdrawal liability if the employer is contributing to "a plan for work performed in the entertainment industry, primarily on a temporary or project-by-project basis, if the plan primarily covers employees in the

---

[1] *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 227–28 (1986).
[2] 29 U.S.C. § 1381(a).
[3] *Id.*
[4] *Id.*
[5] 29 U.S.C. § 1401(a)(1).

2

entertainment industry."[6] The parties refer to plans subject to this exception as "Entertainment Plans."

### B.    Facts

The parties agree that the Plan is a multiemployer pension plan subject to the MPPAA's rules. It was established in 1971 to provide pension benefits for employees working under collective bargaining agreements between Southern Nevada Employers and IATSE Local 720.[7] JB is a theatrical production company, responsible for the production of the musical *Jersey Boys* on the Las Vegas Strip.[8] JB employed Local 720 stagehands to work on its production and contributed to the Plan under the terms of its collective bargaining agreement with Local 720.[9]

When *Jersey Boys* closed in 2016, JB withdrew from the Plan. The Plan then issued JB a demand for withdrawal liability.[10] The Plan's trustees determined that the Plan was not an Entertainment Plan and that *Jersey Boys* was not a temporary employer, so the Entertainment Rule did not apply to JB's withdrawal. The Plan's refusal to apply the Entertainment Rule was based in part on a 2013 audit, which was conducted after Disney's production of *The Lion King* at the Mandalay Bay Hotel and Casino closed.[11] The audit showed that a significant percentage of current employees covered by the Plan worked some or all of the time in conventions or trade shows, which the Plan did not consider to be entertainment-industry work.[12] As a result, the

---

[6] 29 U.S.C. § 1383(c)(1).
[7] ECF No. 26-2 at 5.
[8] ECF No. 4-1 at 43.
[9] *Id.* at 23–26.
[10] ECF No. 25-2 at 63–64.
[11] ECF No. 25-1 at 119.
[12] ECF No. 25-2 at 3.

3

Plan formally recognized that it was not an Entertainment Plan because it did not primarily cover employees working in entertainment.[13] JB disputed the withdrawal-liability assessment, claiming that the Entertainment Rule should apply.

The parties submitted their dispute to arbitration with no discovery or live hearing. The arbitrator issued his opinion and award in March 2019, finding that the Plan's assessment was incorrect and that the Entertainment Rule applied, and ordering the Plan to rescind its assessment and refund JB's previous withdrawal-liability payments.[14] The Plan then filed this lawsuit, asking this court to vacate or modify the arbitration award.[15] JB filed a counterclaim, seeking to affirm the award.[16] Both parties move for summary judgment on their claims.[17]

## Discussion

**A.    Legal standard for reviewing an arbitration award**

When reviewing an arbitration award, "the arbitrator's factual findings are presumed correct, rebuttable only by a clear preponderance of the evidence."[18] I review the arbitrator's conclusions of law de novo.[19] Under the MPPAA, a plan's withdrawal-liability determination "is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous."[20] This places the

---

[13] *Id.*

[14] ECF No. 4-1.

[15] ECF No. 4.

[16] ECF No. 6.

[17] ECF Nos. 25, 26. I find these motions suitable for disposition without oral argument.

[18] *Carpenters Pension Tr. Fund for N. Cal v. Underground Const. Co., Inc.*, 31 F.3d 776, 778 (9th Cir. 1994) (citing 29 U.S.C. § 1401(c)).

[19] *Id.*

[20] 29 U.S.C. § 1401(a)(3)(A).

burden of proof on the employer in withdrawal-liability disputes.[21]  Should the employer disagree with the pension plan's withdrawal-liability determination, the onus is on the employer to prove that the determination was in error.[22]  The MPPAA places no such burden on pension plans in making their initial determinations or in defending those determinations in arbitration.[23]

**B.     The arbitrator applied an incorrect burden of proof.**

The arbitrator began his opinion by saying that the Entertainment Rule would apply to JB's withdrawal were it not for two actions taken by the Plan: first, a 2007 amendment, the validity of which the parties dispute; and, second, the 2013 audit.[24]  After finding the 2007 amendment invalid,[25] the arbitrator said that the 2013 audit could not be used to say that the Plan isn't an Entertainment Plan because the 2013 audit is stale data.[26]  The arbitrator noted that the Plan acknowledged at the time of the audit that the Plan could eventually become an Entertainment Plan again.[27]  The arbitrator concluded that this contingency suggested that the Plan had an obligation to conduct a fresh audit at the time *Jersey Boys* closed to determine whether JB owed withdrawal liability.[28]  The Plan now argues that this conclusion impermissibly shifts the burden of proof in withdrawal-liability disputes.

---

[21] *See Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for So. Cal.*, 508 U.S. 602, 609 (1993).
[22] *See id.*; 29 U.S.C. § 1401(a)(3)(A).
[23] *See In re Truck Co. Holdings*, 341 B.R. 596, 606 (E. D. Mich. 2006).
[24] ECF No. 4-1 at 12.
[25] *Id.* at 12–17.
[26] *Id.* at 17–19.
[27] *Id.* at 18.
[28] *Id.*

But the language of the MPPAA is clear: for JB to avoid the Plan's withdrawal-liability determination, JB must prove that the plan is an Entertainment Plan subject to the Entertainment Rule.[29] The Plan's determination is presumed correct; it's not up to the Plan to prove that it isn't an Entertainment Plan.[30] But according to the arbitrator's holding, no matter what the Plan determined in 2013, the Plan would need to conduct a fresh audit whenever a show closes to prove that it was still not an Entertainment Plan. The statute requires the opposite—the party claiming the exception has to prove that the exception applies.

The arbitrator's error here bears strong resemblance to the one in *In re U.S. Truck Company Holdings, Inc.*, in which the Eastern District of Michigan reviewed a similar issue.[31] In that case, a company withdrew from a pension plan and claimed that it did not owe withdrawal liability under the MPPAA's trucking-industry exception.[32] When the withdrawing company filed Chapter 11 bankruptcy, the pension plan made a claim of withdrawal liability, arguing that the exception did not apply.[33] The bankruptcy court found that the pension plan failed to meet its burden to prove that the exception did not apply because the plan relied on employer surveys that were prepared in an unrelated dispute several years before to determine that the exception didn't apply.[34] The district court found that this was an error.[35] The bankruptcy court had concluded that the pension plan was required to use "the most reliable

---

[29] *See* 29 U.S.C. § 1401(a)(3)(A).
[30] *Id.*
[31] *U.S. Truck*, 341 B.R. at 606.
[32] *Id.* at 600.
[33] *Id.*
[34] *Id.* at 603.
[35] *Id.* at 605.

information under its control" to make a factual determination about the applicability of an exception.[36] But the district court concluded on appeal that this conclusion was not supported by the statute.[37] The MPPAA does not require plans to meet a certain level of reliability in making an initial withdrawal-liability determination; the burden of proof is always on the employer disputing the determination to show that an exception applies.[38]

The arbitrator here applied the same erroneous approach that the bankruptcy court did in *U.S. Truck*. He discarded the 2013 audit because he found it to be too stale to support the Plan's determination. But doing so impermissibly shifted the burden to the Plan to justify its determination, resulting in an award based on a faulty premise because the Plan was under no obligation to perform a new audit to justify its determination. As the party with the burden of proof, it was JB who had to prove that the plan was an Entertainment Plan.

Because the arbitrator applied a legally erroneous burden of proof, I cannot enforce the resulting award. I therefore grant the Plan's motion for summary judgment, deny JB's, and vacate the arbitration award.

### Conclusion

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment **[ECF No. 25] is GRANTED,** the defendant's motion for summary judgment **[ECF No. 26] is DENIED**, and **the arbitration award is vacated.**

---

[36] *Id.* at 606.
[37] *Id.*
[38] *Id.*

IT IS FURTHER ORDERED that the Clerk of Court is directed to **ENTER JUDGMENT** in favor of the plaintiff and against the defendant and **CLOSE THIS CASE**.

Dated: September 25, 2020

_____
U.S. District Judge Jennifer A. Dorsey