# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Nevada Resorts Association – International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada Local 720 Pension Trust, <br><br> Plaintiff <br><br> v. <br><br> JB Viva Vegas, L.P., <br><br> Defendant | Case No.: 2:19-cv-00499-JAD-DJA <br><br> **Order Granting Defendant's Motion to Amend Judgment, Denying Plaintiff's Motion for Attorney's Fees, and Remanding this Case** <br><br> [ECF Nos. 35, 38] |

When the musical *Jersey Boys* ended its run on the Las Vegas Strip, JB Viva Vegas, the show's producer, stopped making payments on behalf of its union stagehands to the Nevada Resorts Association – International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada Local 720 Pension Trust (the Plan). The Plan determined that, under the Multiemployer Pension Plan Amendments Act (MPPAA), JB was required to pay withdrawal liability to the Plan. JB disagreed, and the parties submitted their dispute to arbitration. The arbitrator found that JB did not owe the Plan any money because it qualified for the entertainment exception to the MPPAA's withdrawal-liability rules. The Plan initiated this action to modify the award and JB counterclaimed, asking for the arbitrator's decision to be affirmed. Last year, I granted the Plan's motion for summary judgment and vacated the arbitrator's award.[1]

---

[1] ECF No. 33.

The Plan now moves for attorney's fees, claiming it was the "successful party" in this case.[2] JB responds with a motion to alter or amend judgment under F.R.C.P. 59(e), contending that my previous order did not address an independent basis the arbitrator gave for finding in favor of JB, and that I should have remanded this case back to the arbitrator to make findings consistent with my order.[3] I grant JB's motion to amend judgment, make further determinations as to the arbitrator's opinion, vacate the judgment entered in the Plan's favor, and remand this case back to the arbitrator for further findings. I also deny without prejudice the Plan's motion for attorney fees because no party has yet prevailed.

## Background

### I.  Withdrawal liability and the MPPAA[4]

After passing the Employee Retirement Income Security Act of 1974 (ERISA), "Congress determined that unregulated withdrawals from multiplayer plans could endanger their financial vitality and deprive workers of the vested rights" that they anticipated would be theirs when they retired.[5] To alleviate the problem of employer withdrawals, Congress amended ERISA with the MPPAA to require employers who withdraw from multiemployer pension plans to pay withdrawal liability—the unfunded vested benefits attributable to that employer's participation.[6] Congress adopted these rules as a safeguard for "the solvency of private pension plans."[7] So under the MPPAA, if an employer withdraws from a multiemployer pension plan,

---

[2] ECF No. 35.

[3] ECF No. 38.

[4] I repeat this section of my previous order (ECF No. 33) for clarity of analysis.

[5] *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 227–28 (1986).

[6] 29 U.S.C. § 1381(a).

[7] *Id.*

"the employer is liable to the plan in the amount determined" by the pension-plan sponsor.[8] When an employer withdraws from a plan, the plan sponsor issues a determination of liability, which the employer may dispute. The MPPAA requires that most disputes about withdrawal liability be resolved through arbitration.[9]

There are a handful of exceptions to withdrawal liability. Relevant to this dispute is the so-called "entertainment exception," which allows employers to avoid withdrawal liability if the employer is contributing to "a plan for work performed in the entertainment industry, primarily on a temporary or project-by-project basis, if the plan primarily covers employees in the entertainment industry."[10] The parties refer to plans subject to this exception as "entertainment plans."

## II. Facts

The Plan was established in 1971 to provide pension plans for employees working under collective bargaining agreements between Southern Nevada Employers and IATSE Local 720.[11] In 2008, JB, a theatrical production company, began employing Local 720 stagehands for its musical *Jersey Boys* and contributing to the Plan on their behalf. In 2013, the Plan conducted an audit to find out if its participants engaged in enough entertainment work for the Plan to be considered an entertainment plan.[12] The audit assessed employees in the Plan from January 2009 to January 2012 and determined that the majority of employees in the Plan worked for trade shows and conventions, which are not considered "entertainment" under the MPPAA's

---

[8] *Id.*
[9] 29 U.S.C. § 1401(a)(1).
[10] 29 U.S.C. § 1383(c)(1).
[11] ECF No. 26-2 at 5.
[12] ECF No. 25-1 at 119–121.

withdrawal-liability exception.[13]  As a result, the Plan formally acknowledged that "the [Plan] is not an entertainment industry [plan] under the withdrawal[-]liability statutes."[14]  In 2014, it also amended the union's retirement-plan document to memorialize the determination that "the Plan is not an Entertainment Plan under ERISA."[15]  In 2016, *Jersey Boys* ended its run and JB withdrew from the Plan.[16]  The Plan then issued JB a demand for withdrawal liability.[17]  JB disputed the withdrawal-liability assessment, claiming that the entertainment exception should apply.

The parties submitted their dispute to arbitration with no discovery or live hearing.  The arbitrator issued his opinion and award in March 2019, finding that the Plan's assessment was incorrect and that the entertainment exception did apply.[18]  As relevant here, the arbitrator made two findings.  First, he found that the Plan's entertainment status "must be measured at the time an employer's obligation to contribute ceases" and because the Plan did not perform a new audit to determine how many Plan employees were in the entertainment industry in 2016 when JB withdrew from the plan, JB could not be assessed with withdrawal liability.[19]  Second, the arbitrator found that, as of 2008, when *Jersey Boys* began contributing to the fund, "the entertainment [exception] clearly applied, and JB developed its business and operations with the

---

[13] 29 U.S.C. 1383(c)(2) (defining the entertainment industry to include "theater, motion picture . . . radio, televion, sound or visual recording, music, and dance, and . . . such other entertainment activities as the [Pension Benefit Guarantee Corporation (PBGC)] may determine to be appropriate").

[14] ECF No. 25-2 at 3.

[15] ECF No. 25-1 at 96.

[16] ECF No. 25-2 at 63.

[17] *Id.* at 63–64.

[18] ECF No. 4-1 at 2–20.

[19] *Id*. at 18–19.

4

assurance that it need not [prepare] for withdrawal liability when *Jersey Boys* ultimately closed . . . ."[20] He found that it would be unreasonable to apply the Plan's 2013 and 2014 determinations that the Plan was not an entertainment plan when JB assumed it *was* an entertainment plan in 2008.

The Plan filed this lawsuit, asking this court to vacate or modify the arbitration award, and JB counterclaimed.[21] I previously ruled that the arbitrator's first finding was erroneous because he misapplied the MPPAA's standard of proof, which requires the employer disputing withdrawal liability to prove that the plan was an entertainment plan.[22] The arbitrator, by requiring the Plan to conduct a fresh audit whenever an employer left the Plan, impermissibly shifted that burden onto the Plan to show it wasn't an entertainment plan.[23] I vacated the arbitrator's award, entered judgment in favor of the Plan, and closed the case without addressing the arbitrator's second finding.[24] I do so now.

## Discussion

**I.     I grant JB's motion to alter or amend judgment.**

Rule 59(e) permits a trial judge to alter or amend a judgment in very limited circumstances.[25] The Ninth Circuit has cautioned against the frequent use of such a motion, explaining that it "should not be granted, absent highly unusual circumstances."[26]

---

[20] ECF No. 4-1 at 19.
[21] ECF No. 4; ECF No. 6.
[22] ECF No. 33.
[23] *Id*. at 6.
[24] *Id.*
[25] *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).
[26] *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

5

Reconsideration is only "appropriate under [Rule] 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law."[27] This rule does not give parties a chance to relitigate previously decided issues or "raise arguments or present evidence for the first time" that "could reasonably have been raised earlier in the litigation."[28]

JB contends that I committed clear error by not addressing the arbitrator's finding that it would be unreasonable to make it pay withdrawal liability because JB relied on the assumption that the Plan was subject to the entertainment exception when it began making contributions in 2008.[29] JB alternatively contends that I should have remanded this case to the arbitrator to "make a determination of whether the Plan's withdrawal liability assessment against JB was reasonable under the burden of proof established by this [c]ourt" because I did not make that substantive determination myself.[30] The Plan opposes, arguing that I didn't commit clear error when I "disregard[ed]" the arbitrator's alternative finding, and reiterates that JB has still not met its burden of proof.[31]

In my previous order, I found that the arbitrator applied a legally erroneous burden of proof, but did not determine whether JB had otherwise met its burden or whether the arbitrator's alternative reason to find in favor of JB was correct. Because I did not make findings sufficient

---

[27] *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).

[28] *Carroll*, 342 F.3d at 945; *see Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d. Cir. 1998)) (explaining that "the purpose of Rule 59" is not to give parties a "forbidden 'second bite at the apple'").

[29] ECF No. 38 at 2.

[30] *Id*. at 3.

[31] ECF No. 41 at 5.

to close this case, I vacate my previous order awarding judgment, address the arbitrator's second finding, and remand to the arbitrator for a decision consistent with the analysis in both orders.

## II.  The arbitrator's second finding was erroneous.

When reviewing an arbitration award, "the arbitrator's factual findings are presumed correct, rebuttable only by a clear preponderance of the evidence."[32]  I review the arbitrator's conclusions of law de novo.[33]  Under the MPPAA, a plan's withdrawal-liability determination "is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous."[34]  If the employer disagrees with the pension plan's withdrawal-liability determination, the onus is on the employer to prove that the determination was in error.[35]

The arbitrator's secondary reason for finding in favor of JB hinges on his determination that he could look to the year JB joined the Plan to decide whether it was reasonable to assess withdrawal liability. [36]  The Plan contends that using the year an employer enters a plan to assess

---

[32] *Carpenters Pension Tr. Fund for N. Cal v. Underground Const. Co., Inc.*, 31 F.3d 776, 778 (9th Cir. 1994) (citing 29 U.S.C. § 1401(c)).

[33] *Id*.

[34] 20 U.S.C. § 1041(a)(3)(A).

[35] *Id.*; *see also Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for So. Cal.*, 508 U.S. 602, 609 (1993).

[36] The parties dispute whether the arbitrator applied the correct standard of proof here, too.  The Plan notes that JB presented no evidence demonstrating that, in 2008, that plan was "clearly" an entertainment plan, and the arbitrator didn't explicitly make findings to that effect.  ECF No. 32 at 8–9.  Because I find that 2008 is not the correct year by which to assess the applicability of withdrawal-liability exceptions, I do not determine whether the arbitrator erred in his determination that the Plan was subject to the entertainment exception in 2008.

its withdrawal liability is erroneous.  Because this is a legal determination, I review the arbirtator's determination de novo.[37]

      The arbitrator does not explain why he found that the application of the entertainment exception should be determined as of the date an employer entered a plan.[38]  The entertainment exception applies to an employer "if the plan [it contributes to] primarily covers employees in the entertainment industry."[39]  For those employers, a "complete withdrawal" from the plan occurs only under certain circumstances outlined in the statute.[40]  The MPPAA does not explicitly state when application of a special-industry rule must be assessed, and there is little—if any—precedent addressing this question.  The Plan argues that the present-tense nature of the rule implies that one should determine whether a plan "covers employees in the entertainment industry" when a "complete withdrawal occurs."[41]  I'm persuaded by that interpretation,

---

[37] JB contends the arbitrator's unreasonableness determination is a factual determination only reviewable under the preponderance-of-the-evidence standard.  ECF No. 38 at 6.  But the arbitrator's interpretation of the MPPAA to determine *when* withdrawal liability can be assessed is purely a legal question.  *See*, *e.g.*, *U.S. v. Stephens*, 237 F.3d 1031, 1033 (9th Cir. 2001) (stating that "[t]he proper interpretation of a statute is a question of law").

[38] This finding indeed conflicts with the arbitrator's earlier finding that the Plan's entertainment status "must be measured at the time an employer's obligation to contribute ceases."  ECF No. 41-1 at 18.  The arbitrator does not explain why he makes this determination and then ignores it.

[39] 29 U.S.C. § 1383(c)(1).

[40] *Id*. § 1383(c)(1); (b)(2).

[41] ECF No. 41 at 9.  Informative, but not determinative, is the PBGC's 1982 proposed rulemaking concerning withdrawal-liability determinations for the building and construction industry, which has special exceptions similar to those in the entertainment industry.  *See* 47 FR 42588-02, 1982 WL 132214.  In a discussion concerning when a plan meets the exception requirements, the PBGC questions whether the plan and employer must meet the tests "only at the time the issue is raised, e.g., upon the employer's withdrawal" or whether the tests should "take into account the characteristics of the plan and the employer over a longer period of time?"  *Id*. at 42591.  Never considered was the possibility that the tests should be met when the employer begins contributing to the plan.

particularly in light of the fact that JB provides no statutory argument rebutting it,[42] and the few cases that tangentially address this issue seem to take it as a given that an exception's application is determined at the time of withdrawal.[43]

So I find that the question of whether JB benefits from the entertainment exception must be determined as of the year JB withdrew from the Plan, not the year it joined. I therefore vacate the judgment in favor of the Plan and remand this case back to the arbitrator to determine whether JB met its burden of proof to show that the Plan was an entertainment plan when it withdrew in 2016, and therefore whether the entertainment exception applies.

### III.  I deny without prejudice the Plan's motion for attorney's fees.

The Plan filed a motion for attorney's fees after my previous order awarded judgment in its favor and closed this case.[44] It argues that its trust agreement contractually requires that JB pay attorney's fees incurred from an unsuccessful challenge to the Plan's withdrawal-liability assessment, and that the MPPAA permits a discretionary award of fees to the successful party for actions involving withdrawal liability.[45] Because I vacate the portion of my order awarding judgment to the Plan, I deny without prejudice its motion for attorney's fees.

---

[42] *See* ECF No. 30 at 32–34.

[43] *See*, *e.g*, *In re U.S. Truck Co. Holdings, Inc.*, 341 B.R. 596, 602–03 (E.D. Mich. 2006) (applying trucking exception as of when the employer ceased contributions to the plan); *Cent. States Se & Sw. Areas Pension Fund v. Bellmont Trucking Co., Inc.*, 610 F. Supp. 1505, 1511–12 (N.D. Ind. 1985) (using data from years after employer's first contribution to determine whether the trucking exception applied); *Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia*, 830 F.2d 1241, 1251 (9th Cir. 1987) (determining whether an employer was part of a plan "as of the withdrawal date").

[44] ECF No. 35.

[45] *Id*. at 4.

**Conclusion**

IT IS THEREFORE ORDERED that JB's motion to amend or alter judgment **[ECF No. 38] is GRANTED,** and that the judgment in favor of the Plan **[ECF No. 34] is VACATED**. This case is **REMANDED** back to the arbitrator to make determinations consistent with this order and my September 25, 2020 order [ECF No. 33].

IT IS FURTHER ORDERED that the Plan's motion for attorney's fees **[ECF No. 35] is DENIED without prejudice.**

_____
U.S. District Judge Jennifer A. Dorsey
September 30, 2021